UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

In the matter of Arbitration Between GENERAL  :
SECURITY NATIONAL INSURANCE COMPANY,

                                             :   10 Civ. 8682 (NRB)(THK)
                        Petitioner,

                                             :   **MEMORANDUM OF LAW IN**
         -and-                                   **OPPOSITION TO PETITION**
                                             :        **TO CONFIRM**
AEQUICAP PROGRAM ADMINISTRATORS, INC.,           **ARBITRATION AWARD**

                                             :
                        Respondent.

                                             :

------------------------------------------------------------------- x

## MEMORANDUM OF LAW IN OPPOSITION TO PETITION TO CONFIRM ARBITRATION AWARD

### PRELIMINARY STATEMENT

Respondent AequiCap Program Administrators, Inc. ("AequiCap" or "Respondent"), respectfully submits this Memorandum of Law in Opposition to Petitioner General Security National Insurance Company's ("General Security" or "Petitioner") Petition to Confirm Arbitration Award, dated November 17, 2010 ( "Petition").

In an award, dated October 18, 2010, ("October 18 Award") the Arbitration Panel presiding over the underlying arbitration proceeding granted Petitioner's Motion for Summary Judgment. As part of the Award, the Panel ordered AequiCap to pay to General Security the principal amount of the monies owed in the amount of $426,802. Paragraph 4 of the October 18 Award awarded General Security applicable interest and attorneys' fees to be decided at a future hearing. By award dated November 16, 2010, ("November 16 Award") the Panel awarded General Security $239,946 in attorneys' fees and disbursements, incurred in connection with the Petitioner's prosecution of the arbitration. Petitioner now seeks an order confirming the October 18 and November 16, 2010 Awards.

AequiCap requests that the portion of the Petition seeking to confirm the Awards be denied and that the November 16 Award and Paragraph 4 of the October 18 award be vacated. By awarding attorneys' fees the Arbitration Panel wantonly disregarded well-settled New York law restricting the award of such fees in an arbitration. The Panel therefore exceeded its authority in making the award of attorneys' fees, and also showed manifest disregard for the applicable law. As such, AequiCap respectfully requests this Court vacate or modify Paragraph 4 of the Panel's October 18 Award and the November 16, 2010 Award of attorneys' fees and disbursements.

## STATEMENT OF FACTS

### The ACCA

The Amended Contingent Commission Agreement, dated June 20, 2003, ("ACCA") at the heart of the arbitration arose from litigation between General Security and Claims Control Inc. ("CCI"), a related company to AequiCap which administrated claims under a 1997 Program Administrator Agreement between AequiCap's predecessor, Professional Insurance Underwriters Inc. ("PIU") and General Security, and an arbitration between General Security and PIU regarding underwriting disputes. The settlement of both proceedings included the ACCA between General Security and PIU. Under the ACCA, PIU was to pay General Security a return contingent commission of 10% of all paid losses, subject to certain conditions and also subject to dispute by PIU.

Section 13 of the ACCA provides that:

Any disputes arising under [the ACCA] are subject to the arbitration clause in the Underwriting Agreement.

See Exhibit A.

The referenced Underwriting Agreement is the Program Administrator Agreement, dated January 1, 1997 ("Underwriting Agreement"), between PIU and General Security. The Underwriting Agreement contains both an arbitration clause and a New York choice-of-law provision. Section I of the General Provisions section of Underwriting Agreement provides that:

> This Agreement may not be altered or modified, except in writing, signed by the parties hereto. A waiver by the Company of any breach of default by the Administrator under this Agreement shall not constitute a continuing waiver or a waiver by the Company of any subsequent act in breach or in default hereunder. This Agreement shall be <u>interpreted in accordance with the laws of the State of New York</u> with respect to matters concerning General Security Property and Casualty Company and the <u>laws of the State of New York</u> except Section IX.D, as it relates to punitive damages, which shall be interpreted in accordance with the laws of the state in which the Administrator maintains its principal office. with respect to matters concerning General Security Insurance Company.

> <u>See</u> Exhibit B at 2. (emphasis added).

The Underwriting Agreement also provides under the General Provisions section XII(c) that:

> In the event that any disagreement or dispute shall arise as to the effect or interpretation of any of the terms, provisions or conditions of this Agreement, or as to the performance of either party under this Agreement, the parties hereto shall submit such disagreement or dispute for resolution to a panel of three disinterested arbitrators who shall be experienced in the fields of insurance and the American Agency system.

> *     *     *

> The arbitration panel shall make its decision with regard to the provisions of this Agreement and the custom and usage of the insurance business to the extent not inconsistent with the provisions of this Agreement. This arbitration panel shall issue its decision in writing based upon a hearing to be held in <u>New York City</u> in which evidence may be introduced without following the strict rules of evidence, but which cross examination and rebuttal shall be allowed. The Panel shall make its decision within sixty (60) days following the termination of the

3023842.4

hearing unless the parties agree to an extension.  The majority decision of the Panel shall be final and binding upon all parties to the proceeding. Judgment may be entered upon the award of the Panel in any court having jurisdiction thereof.

See Exhibit B at 11. (emphasis added).

Another agreement between the parties, the Commutation and Release Agreement ("Commutation Agreement") entered into by the parties on December 31, 2003, also provides for New York choice-of-law.  Section 10 provides:

[The Commutation Agreement] shall be governed by the laws of New York.  Any disputes arising out of or relating to this Commutation Agreement shall be subject to the arbitration clause contained in the Reinsurance Agreement, which is incorporated herein by reference.

See Exhibit C. (emphasis added)

### The Arbitration

General Security initiated arbitration against AequiCap on November 10, 2009 by making a demand for arbitration pursuant to the ACCA.  Two party-appointed arbitrators and a neutral umpire ("Panel") were selected pursuant to the Arbitration Clause.  On July 29, 2010 General Security submitted a motion for summary judgment on its case in chief, which was granted by the Panel on October 18, 2010, and the Panel issued the October 18 Award.

In Paragraph  4 of the October 18, 2010 Award, the Panel awarded General Security attorneys' fees and disbursements incurred in connection with the Petitioner's prosecution of the arbitration, along with $426,802 of principal sought by General Security.  The October 18 Award provided that the amount of attorneys' fees and disbursements would be determined at a hearing.

During the October 25, 2010 hearing on attorney fees, AequiCap moved the Panel to reconsider its award of attorneys' fees, submitting a supplemental memorandum of law in support of its motion for reconsideration along with an appendix of cited authorities and cases.

3023842.4

A copy of the Memorandum of Law for Reconsideration of the Panel's Award of Attorneys' Fees to Petitioner, dated October 22, 2010, is attached as Exhibit D.  The Memorandum of Law argued that the arbitration was governed by New York law and, pursuant to New York law, attorneys' fees could not be authorized by the Panel under the circumstances surrounding this arbitration proceeding.

Following the hearing, on October 27, 2010, the Panel issued Interim Order #9, which directed both parties to brief whether the Federal Arbitration Act can preempt state law when the general choice-of-law is stated in a contract, an issue raised by AequiCap at the hearing. AequiCap's Memorandum of Law in Response to Interim Order #9, dated November 3, 2010, addressed this issue and also addressed New York's Civil Procedure Law and Rule ("CPLR") 7513, which bars an award of attorneys' fees in arbitrations and a long line of applicable case law vacating awards of attorneys' fees by arbitration panels. AequiCap included along with the November 3, 2010 brief an appendix of cited authorities and exhibits.  A copy of AequiCap's November 3, 2010 brief is attached as Exhibit E.

The Panel denied AequiCap's motion for reconsideration in an Order dated November 16, 2010, and awarded General Security $239,946 "to compensate for its attorneys' fees and disbursements incurred in this arbitration."  General Security has now commenced this action to confirm the Panel's awards.

For the reasons set out below, the request to confirm Paragraph 4 of the October 18 Award and the November 16 Award of attorneys' fees must be denied and the Awards vacated. The Panel was aware of and chose to manifestly disregard well-settled New York law restricting a panel's award of arbitration attorneys' fees.  As such, AequiCap respectfully requests that this Court vacate and/or modify the Panel's award for attorneys' fees.

3023842.4

## ARGUMENT

## I.     STANDARD OF REVIEW

Arbitration awards may be vacated or modified when arbitrators exceed their authority granted to them by the parties, and applicable arbitration provisions.  There are several potential grounds for vacating or modifying an arbitration award when the arbitrator "exceeded [his] powers, Federal Arbitration Act ("FAA"), 9 U.S.C. 10(a)(4), or was guilty of manifest disregard of the law."  Halligan v. Piper Jaffray, Inc., 148 F.2d 197 (2d Cir. 1998).  An arbitrator is not free to "dispense his own brand of industrial justice" and an arbitrator's decision that manifestly disregards is not to be enforced."  Silvester v. Michael E. Sachs, 1996 U.S. Dist. LEXIS 6618 (May 13, 1996 S.D.N.Y).

A court may modify or vacate an award on the ground of manifest disregard of the law if "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case." Banco de Suguros del Estado v. Mutual Mar. Off, Inc., 344 F.3d 255, 263 (2d Cir. 2003).

Courts must also defer to the parties' relevant agreements in an action, including a parties' choice-of-law agreement, and in the case of a New York choice-of-law provision, any award must be "determined in accordance with the principles of New York substantive law regarding when such an award is warranted." Asturiana De Zinc Marketing Inc. v. LaSalle Rolling Mills Inc., 20 F. Supp. 2d 670, 674 (S.D.N.Y. 1998).  CPLR 7511 follows suit with the FAA and federal law, and provides, in pertinent part that an "award shall be vacated on the application of a party who…participated in the arbitration…if the court finds the rights of that party were prejudiced by: (i) corruption, fraud or misconduct in procuring the award; or (iii) an

3023842.4

arbitrator…exceeded his power or so imperfectly executed it that a final and definitive award upon the subject matter submitted was not made…" D. Weckstein & Co., Inc v. Trinity Bui, 2009 NY Slip Op 31292U, *7 (Sup. Ct. N.Y Cty. 2009).

As detailed below, the Panel exceeded its authority and manifestly disregarded New York law prohibiting the award of attorneys' fees in this arbitration. As such, the Panel's Award should be vacated and/or modified.

## II.     THE ARBITRATION PANEL ERRED IN AWARDING ATTORNEYS' FEES TO THE PETITIONER, AND AS SUCH, THIS COURT MUST VACATE OR MODIFY THE PANEL'S FINAL AWARD

The Federal Arbitration Act's purpose was to "enforce [arbitration] agreements into which parties had entered" and "place arbitration agreements on equal footing with other contracts," but was not to force parties to arbitrate or even require them to do so under any specific set of rules. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985). Rather, parties dictate the terms of their own contracts, and the FAA does no more than ensure that those terms are enforced. Id.

The Underwriting Agreement, as incorporated into the ACCA, contained a New York choice-of-law provision. By choosing New York law to govern the agreement, the parties agreed to be bound by the liberties and restrictions that come with New York law, including New York restrictions on the award of attorneys' fees in arbitrations. In fact, New York law is the only governing law or body referenced throughout the various agreements between the parties, including the ACCA, the Underwriting Agreement and the Commutation Release, and New York City was deemed to be the place where the arbitration is to occur.

As discussed in detail below, it is apparent, given the facts and circumstances of the arbitration and applicable New York and Federal statutory and case law, that the Panel's award

3023842.4

of attorneys' fees should be vacated because the Panel exceeded its authority and showed

manifest disregard for the applicable law in making the Award of attorneys' fees.

Significant grounds exist to vacate the Panel's award for attorneys' fees.  The

Panel defied New York law restricting the award of attorneys' fees, despite being presented with

the governing New York statutory law and applicable case law.  In doing so, the Panel chose to

ignore and manifestly disregarded the clearly applicable law in rendering its decision.  As such,

its award of attorneys' fees must be vacated.

### A.    THE ARBITRATION AGREEMENT CONTAINS A NEW YORK CHOICE-OF-LAW PROVISION

Contrary to the Petitioner's assertions, the applicable agreement, the ACCA, is subject to

a New York choice-of-law provision, and therefore New York law governs any dispute arising

out of the parties' relationship.

Section 13 of the ACCA provides that:

> any disputes arising under [the ACCA] are subject to the arbitration
> clause in the Underwriting Agreement.

See Exhibit A.

The Program Administrator Agreement, dated January 1, 1997 ("Underwriting

Agreement"), as incorporated into the agreement between the parties, provides an arbitration

clause and a New York choice-of-law provision.   Section I of the General Provisions section of

Underwriting Agreement provides in part that:

> This Agreement shall be interpreted in accordance with the laws of the
> State of New York with respect to matters concerning General Security
> Property and Casualty Company and the laws of the State of New York
> with respect to matters concerning General Security Insurance Company.

See Exhibit B at 2. (emphasis added)

3023842.4

The Underwriting Agreement also provides under the General Provisions section XII(c) that:

> The arbitration panel shall make its decision with regard to the provisions of this Agreement and the custom and usage of the insurance business to the extent not inconsistent with the provisions of this Agreement. This arbitration panel shall issue its decision in writing based upon a hearing to be held in <u>New York City</u> in which evidence may be introduced without following the strict rules of evidence, but which cross examination and rebuttal shall be allowed. The Panel shall make its decision within sixty (60) days following the termination of the hearing unless the parties agree to an extension. The majority decision of the Panel shall be final and binding upon all parties to the proceeding. Judgment may be entered upon the award of the Panel in any court having jurisdiction thereof.

> <u>See</u> Exhibit B at 11. (emphasis added)

As demonstrated by the provisions, the Underwriting Agreement, as incorporated through the ACCA, does not grant the Panel a "wide latitude" of relief as suggested by the Petitioner and at no point does it grant the Panel authority to award attorneys' fees. Rather, it is clear from the Underwriting Agreement that the parties chose to be bound by New York law.

The present case is also distinguishable from the case principally relied upon by the Petitioner as support for its argument that arbitration panels may award attorneys' fees, <u>Reliastar Life Insurance Company of New York v. EMC National Life Company</u>, 564 F.3d 81 (2d Cir. 2008). The agreement in <u>Reliastar</u> did not contain a choice-of-law provision, such as here, and was explicitly governed by the Federal Arbitration Act, along with New York law. <u>Id</u>. at 85. The arbitration clause in <u>Reliastar</u> provided that:

> Any arbitration instituted pursuant to this Article shall be held in New York, New York or another site mutually agreed upon by the parties and the laws of the State of New York and to the extent applicable, the Federal Arbitration Act, shall govern the interpretation and application of the agreement.

> <u>Id</u>. at 85.

9

The court's ultimate decision in <u>Reliastar</u> relied on the parties' rights under federal law and the Federal Arbitration Act and on a previous case with a significantly broader arbitration clause than the one present in this matter, <u>PaineWebber Inc. v. Bybyk</u>, 81 F.3d 1193, 1202 (2d Cir. 1996).  In <u>Paine Webber</u>, the arbitration agreement stated that "any and all controversies" shall be submitted to arbitration and there was no express limitation with respect to attorneys' fees.  <u>Id</u>.  <u>Reliastar</u> also held the applicable arbitration clause to be a "broad arbitration clause" as the provision did not solely designate New York law, and did not even solely designate New York as the location of any dispute.  <u>Reliastar</u>, 564 F.3d 81, 86.

As evidenced by the choice-of-law provision in the Underwriting Agreement, incorporated through the ACAA, and the selection of New York City as the location for any arbitration, there is no question that the parties intended that New York state law govern any dispute arising from the parties' relationship and any dispute in arbitration.  As such, the laws of the State of New York exclusively govern this matter and <u>Reliastar</u> does not apply.

### B.    THE FAA DOES NOT PREEMPT THE PARTIES' NEW YORK CHOICE OF LAW PROVISION

New York choice-of-law provisions and the New York special arbitration laws are not preempted by the FAA.  Courts have consistently held that the FAA does not only preempt the relevant New York law, specifically including CPLR 7513, but instead New York and federal courts consistently defer to New York choice-of-law provisions that are contained in arbitration agreements. The FAA's purpose was <u>not</u> to displace the contracts freely entered between parties. <u>Volt Info. Scis. Inc. v. Board of Trs. Of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 477 (1989). Rather, courts will only apply the federal law and the FAA where there is an ambiguity in the

parties' agreement or if the state provision is inconsistent with the FAA's goal to enforce a party's arbitration agreement. Id.[1]

As noted by the Supreme Court in <u>Moses H. Cone</u> and clarified in <u>EEOC v. Waffle House, Inc.</u> "absent some ambiguity in the agreement...it is the language of the contract that defines the scope of disputes subject to arbitration." <u>EEOC v. Waffle House, Inc.</u>, 122 S. Ct. 754, 762 (2002); <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25 (1983).

In <u>Volt Information Sciences Incorporated v. Board of Trustees Of Leland Stanford Junior University</u>, the question before the Supreme Court was whether the FAA preempted a choice-of-law provision in the arbitration agreement between the parties which provided for the application of the California rules of arbitration. <u>Volt</u>, 489 U.S. 468 (1989). Specifically, the Court addressed whether California's arbitration stay provision was permissible under the FAA, and determined that California law governed where the parties had agreed to arbitrate in accordance with California law. <u>Volt</u>, 489 U.S. at 478-79. The Court noted that the "FAA contains no express pre-emptive provision, nor does it reflect a congressional intent to occupy the entire field of arbitration," and emphasized that the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms. <u>Volt</u>, 489 U.S. at 478. The Court stated that California law had not been applied, as agreed to pursuant to terms of the arbitration agreement between the parties, and this failure undermined the goals and policy of the FAA to enforce privately negotiated agreements to arbitrate, holding

---

[1] The FAA was passed in 1925 "to overcome courts' refusals to enforce agreements to arbitrate." Pub. L. No. 401, 43 Stat. 883 (1925) (codified as amended at 9 U.S.C. §§ 1-15 (2000)). The origins of those refusals apparently lie in ancient times, when the English courts fought "for extension of jurisdiction – all of them being opposed to anything that would altogether deprive every one of them of jurisdiction." <u>Bernhardt v. Polygraphic Co. of America, Inc.</u>, 350 U.S. 198, 211 (1956). The FAA's purpose was to "enforce [arbitration] agreements into which parties had entered" and "place arbitration agreements on equal footing with other contracts," but was not to force parties to arbitrate or even require them to do so under any specific set of rules. <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614, 626 (1985). Rather, parties dictate the terms of their own contracts, and the FAA does no more than ensure that those terms are enforced. Id.

that the "parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA." Volt, 489 U.S. at 501.

New York courts defer to federal law and the FAA only in the absence of a New York choice-of-law provision. See D. Weckstein & Co. v. Bui, 2009 NY Slip Op 31292, 2009 N.Y. Misc. LEXIS 5816 (N.Y.Sup.Ct. 2009) (confirming arbitration award because the arbitration agreement did not contain a choice-of-law provision and included provision that the arbitration should be conducted pursuant to the code of arbitration procedure of the NASD, whose procedural rules allowed for an award of attorneys' fees). See also Lester Schwab Katz & Dwyer v. Yukevich, 167 Misc. 2d 1004 (N.Y.Sup.Ct. 2009)(finding that arbitration was governed by the FAA because of the absence of a choice-of-law provision in the parties' agreement. The court specifically addressed whether the FAA preempts New York law when the agreement to arbitrate did not expressly reference punitive damages or attorneys' fees and did not contain a New York choice-of-law provision. The court upheld award because the partnership agreement did not provide that it be governed by New York law); see also Bear Stearns v. Fulco, 2008 NY Slip Op 28379, 2008 N.Y.Misc. LEXIS 5822 (N.Y.Sup.Ct. 2008)(distinguishing related cases because that agreement between parties did not contain New York choice-of-law clause and so was governed by the FAA which provides no similar restriction on the award of attorneys' fees. The Court noted that the parties had agreed to arbitrate in accordance with the NASD rules, which contained broad agreement to arbitrate "all controversies," permitting Court to award such fees.

In fact, courts that have specifically addressed this issue have determined that the FAA does not trump CPLR 7513 governing the award of attorneys' fees in arbitration proceedings, and therefore CPLR 7513 must be followed.

The Honorable Jed S. Rakoff of the Southern District of New York specifically found, in a commercial dispute with a substantively similar choice-of-law clause as found in this matter, that New York state law is not preempted by the FAA. Asturiana, 20 F. Supp. 2d 670. The dispute in Asturiana centered on an arbitration clause similar to the one at issue in this case, which provided that:

> Any dispute relating to or arising out of this sale shall be submitted to arbitration before the American Arbitration Association in New York City and shall be subject to the substantive laws of New York State without reference to conflict of law principles.

Id. at 672.

In coming to this determination, the court reasoned that "[u]nlike certain federal statutes, see e.g., 29 U.S.C. 1401(a)(2), the FAA does not provide an independent source of authority for an award of attorneys' fees, and as a result, there was no conflict between the FAA and New York law." Id. at 675.

The Underwriting Agreement, as incorporated by the ACCA, contains a New York choice-of-law provision. In fact, all agreements entered into between the parties included a New York choice-of-law provision and the Underwriting Agreement even provides that the arbitration of any dispute should take place in New York City. As held by the Supreme Court, it is this language - the language of the contract - that must define the scope of the arbitration agreement between the Petitioner and AequiCap. Volt, 489 U.S. at 468. As such, any issue of conflict must be reconciled with New York law. Any other determination or application of any other law, including the FAA, would be contrary to the agreed to and explicit terms stated in the Underwriting Agreement's arbitration clause, as noted above.

### C.    AN ARBITRATION PANEL IS NOT PERMITTED TO AWARD ATTORNEYS' FEES UNDER NEW YORK LAW

3023842.4

When an arbitration agreement includes a New York choice-of-law provision, any award must be "determined in accordance with the principles of New York substantive law regarding when such an award is warranted." Asturiana, 20 F. Supp. 2d 670 at 674. Or "in other words," the arbitrator is "assumed to have the same power as a New York Court (as opposed to a New York arbitrator) to award attorneys' fees, but must still make that determination in accordance with the substantive law such a court would apply." Id. In this case the Panel sat in the place of a New York Court.

Therefore, this matter is governed by New York's special arbitration rules as the governing agreement contains a New York choice-of-law clause. Bear Stearns & Co., Inc. v. Fulco, 2008 NY Slip Op 28379, 21 Misc. 3d 823 (Sup. Ct. N.Y. Cty. 2008). As such, CPLR 7513, which bars an arbitration award for attorneys' fees, governs this matter. By awarding attorneys' fees the Panel manifestly disregarded New York law. AequiCap respectfully requests that this Court vacate the Panel's award as mandated by New York law.

It is well-established under New York law that arbitrators are not permitted to award attorneys' fees in arbitration. Pursuant to CPLR 7513, an arbitration award "unless otherwise provided in the agreement" can only include "the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration." CPLR 7513; see McLaughlin, Piven, Vogel Securities v. Robert Ferrucci, 67 A.D.3d 405, 406 (1st Dep't 2009) (holding that an award of attorneys' fees by an arbitration panel subject to the FAA was not authorized by New York law, because no statute provided for such an award and it was neither authorized by an express provision of the arbitration agreement nor requested by both parties).

14

New York courts only recognize three limited exceptions to New York's special arbitration provision barring the award of attorneys' fees: (1) where a statute provides for such an award, (2) where it was authorized by an express provision in the agreement; or (3) where it is "unmistakenly clear" that both parties intended such an award. In the Matter of Application of Tia Morris v. Obiakor, 2010 NY Slip Op 30568, *5 (Sup. Ct. N.Y. Cty. 2010) (court vacating Panel's award for attorneys' fees as agreement between parties was silent on attorneys' fees and no statute controlled attorneys' fees). Frivolous conduct and objectionable behavior in the arbitration are not sufficient grounds to award attorneys' fees. Id.

New York courts have followed suit and applied CPLR 7513 where the arbitration agreement, as here, did not expressly provide for attorneys' fees. See In Matter of MKC Development Corp. v. Weiss, 203 A.D.2d 573, 612 N.Y.S. 2d 946 (1st Dep't 1994)(holding that because agreements failed to provide for attorneys' fees the arbitrators exceeded the scope of their powers by awarding the petitioners' fee); see also Kidder, Peabody & Co., Inc. v. McArtor, 223 A.D.2d 502, 503 (1st Dep't 1996) (holding that "attorney's fees may not be recovered in an arbitration under New York law unless they are expressly provided for in the arbitration agreement.").

With respect to the third exception, New York courts have further held that mere "boilerplate requests" contained in arbitration pleadings, such as the one asserted by AequiCap in its March 12, 2010 supplemental position statement, do not constitute the "unmistakenly clear" intent to agree that an award of attorneys' fees is authorized, if the party does not further pursue the request during arbitration. Matter of Stewart Tabori & Chang, 282 A.D.2d 385 (1st Dep't 2006). Chang, in vacating the arbitrators' award of attorneys' fees, held that the arbitration panel did not have the authority to award attorneys' fees based on a party's initial assertion of a

boilerplate request for attorneys' fees when the party did not subsequently pursue fees throughout the arbitration and did not withdraw or deny the request for attorneys' fees. <u>See also</u> <u>In the Matter of Morris E. Matza v. Oshman, Helfenstein & Matza,</u> 2006 NY Slip Op 7612, 33 A.D.3d 493 (1st Dep't 2006)(holding that the party seeking attorneys' fees was not entitled to attorneys' fees in arbitration when the opposing party's arbitration pleadings contained boilerplate request for attorneys' fees, but that party did not reiterate the request during the proceeding, objected to any such award during closing argument, and informed the Panel that it was not seeking such fees at hearing).

Based on this, the award of attorneys' fees clearly runs contrary to New York CPLR 7513 and well-established New York case law and authority, and as a result, the award of attorneys' fees should be vacated.

### D.   THE PANEL WAS AWARE OF AND CHOSE TO IGNORE CPLR 7513 THAT IS CLEARLY APPLICABLE TO THIS CASE, AND THE AWARD MUST BE MODIFIED OR VACATED

Failing to abide by New York statute and New York law, as must be done in the arbitration pursuant to the Underwriting Agreement, which is incorporated into the parties' agreement by the ACCA, are grounds for a court to modify or vacate the Panel's decision. As held by the First Department in <u>McLaughlin</u>,

> to modify or vacate an award on the ground of manifest disregard of the law, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.

<u>McLaughlin, Piven, Vogel Securities v. Robert Ferrucci</u>, 209 N.Y Slip Op 7926 (1st Dep't 2009); <u>see also</u> <u>Banco de Suguros del Estado v. Mutual Mar. Off, Inc.</u>, 344 F. 3d 255, 263 (2d Cir. 2003).

3023842.4

In <u>McLaughlin</u>, the court held that an award of attorneys' fees by an arbitration panel was not authorized by New York law, because no statute provided for such an award and it was neither authorized by an express provision of the arbitration agreement nor requested by both parties.  The court determined that it could not overturn the lower court's award because there was no evidence that the arbitrators "knew that New York law was controlling on the question of their authority to award attorneys' fees."  <u>Id</u>.

On the contrary here, AequiCap clearly and succinctly set forth to the Panel in its arguments set forth to the Panel on October 25, 2010, and in its supporting Memorandum of Law dated October 22, 2010, as well as in its November 3, 2010 supplemental submission, that the decision to award attorneys' fees, if not vacated, would have been a manifest disregard for New York law and would reflect "an apparent egregious impropriety on the part of the arbitrators." <u>See</u> Exhibit D at 5.  As evidenced by the significant amount of case law and authority on this issue, as described in detail above, an arbitration panel is not permitted under New York law to award attorneys' fees absent certain circumstances not present here, and any such award is subject to being vacated.

Even if the FAA applied, which AequiCap denies, the Panel's award should also be vacated pursuant to the Federal Arbitration Act standard, 9 U.S.C. § 10(a) and supporting case law, as provided for by Petitioner in Point II of its Petition.  As evidenced in detail above, it is clear that the Panel "knew of the relevant principle, appreciated that this principle controlled the outcome of the dispute, and nonetheless willfully flouted the governing law by refusing to apply it."  <u>Westerbeke Corp. v. Daihatsu Motor Co., Ltd.</u>, 304 F.3d 200, 217 (2d Cir. 2002).  As such, AequiCap respectfully requests that this Court vacate the Panel's award of attorneys' fees.

3023842.4

E.      **THE PANEL INTENTIONALLY AND ERRONEOUSLY DISREGARDED CLEAR AND PLAINLY APPLICABLE LAW AND AS SUCH, THE ITS AWARD OF ATTORNEYS' FEES MUST BE VACATED**

A court in this District has recently re-affirmed that arbitration awards must be vacated where the arbitration panel "intentionally and erroneously disregarded a clear and plainly applicable law." Goldman Sachs Execution and Clearing v. The Official Unsecured Creditors' Committee of Bayou Group et al, 2010 U.S. Dist. LEXIS 125950 (S.D.N.Y Nov. 30, 2010).  It is clear, based on New York law, the facts of this case and the information conveyed to the Panel, that the Panel's award for attorneys' fees was an intentional and erroneous disregard of law and as such, its award must be vacated and/or modified.

As noted in great detail above, New York law specifically restricts the award of attorneys' fees by an arbitration panel.  AequiCap fully briefed the Panel on this issue on two separate occasions prior to the Panel's November 16, 2010 award of attorneys' fees.  Thus, there is no question that the Panel's decision to defy New York law was intentional and its decision to award attorneys' fees erroneously disregarded applicable law.  Any doubt on the application of CPLR 7513 and the standards applied by New York courts was addressed in AequiCap's two memorandum of laws submitted to the Panel on October 22, 2010 and November 3, 2010.  As such, AequiCap respectfully requests that this Court vacate the Panel's award for attorneys' fees.

F.      **ANY AWARD FOR ATTORNEYS' FEES MUST BE GROUNDED ON BAD FAITH CONDUCT AND NO SUCH CONDUCT EXISTS IN THIS MATTER**

Nor does the alleged wrongful conduct of AequiCap alleged by the Petitioner justify the award of attorneys' fees.  The Reliastar bad faith standard for an award of attorneys' fees, as principally relied on by the Petitioner, requiring that the party act in bad faith, vexatiously, wantonly, or for oppressive reasons, is not met in this matter.

In its Petition, Petitioner argues that that AequiCap's "bad faith conduct in resisting payment to General Security and in concocting a belated and frivolous counterclaim as a post-arbitration justification for non-payment" provided reason for the Panel to award attorneys' fees. (Petition at 7). This alleged wrongful conduct simply does not amount to bad faith as defined by New York or federal courts across the country

Bad faith includes severe and drastic acts such as soliciting misleading testimony, demeaning or threatening opposing counsel, falsifying records, disobeying a court order, violating a confidentiality agreement, spoliation of evidence prior to the litigation and failing to initiate or cooperate in discovery. First Nat'l Bank v. Dunham, 471 F.2d 712 (8th Cir. 1973); In re First City Bancorp of Texas, Inc. 282 F.3d 864 (5th Cir. 2002); Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.2d 1332 (11th Cir. 2002), Aloe Vera of Am., Inc. v. United States, 376 F.3d 960 (9th Cir. 2004), Toon v. Wachkenhut Corr. Cop., 250 F.3d 950 (5th Cir. 2001), Stevenson v. Union Pac. R.R., 354 F.3d 739 (8th Cir. 2004), Gomez v. Vernon, 255 F.3d 1118 (9th Cir. 2001), DLC Mgmt. Corp. v. Town of Hyde Park, 163 F.3d 124 (2d Cir. 1998).

Mere objectionable or frivolous conduct is not grounds to award attorneys' fees. See In the Matter of Application of Tia Morris v. Obiakor, 2010 NY Slip Op 30568U, 2010 N.Y. Misc. LEXIS 2630 (N.Y.Sup.Ct. 2010) (vacating arbitration award of attorneys' fees as agreement between parties was silent on attorneys' fees and no statute controlled attorneys' fees. Court held that mere frivolous conduct and objectionable behavior in the arbitration are not sufficient grounds to award attorneys' fees.).

Because there has been no bad faith found by the Panel and since the alleged conduct, even if proven, would not amount in any respect to conduct mandating attorneys' fees, AequiCap

respectfully requests that this Court vacate Paragraph 4 of the October 18, 2010 Award and the November 16, 2010 award of attorneys' fees.

## CONCLUSION

For the reasons provided above, including the Panel's manifest disregard for New York law restricting the award of attorneys' fees by an arbitration Panel, and because the Panel exceeded its authority, AequiCap respectfully requests that the Petition to Confirm Arbitration Award be denied and as such, paragraph four of the October 18, 2010 Award and November 16, 2010 Award be vacated.

Dated:  White Plains, New York
        January 19, 2011

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By____s/Emily A. Hayes_____
Fred N. Knopf (FNK 4625)
Michael W. Coffey (MWC 3747)
Emily A. Hayes (EH 5243)
*Attorneys for the Respondent AequiCap Program Administrators, Inc.*
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

3023842.4

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2011, the foregoing Opposition to Petition to Confirm Arbitration Award was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____ s/Emily A. Hayes_____
Emily A. Hayes (EH 5243)
3 Gannett Drive
White Plains, New York 10604-3407
Phone (914) 323-7000
Facsimile (914) 323-7001
emily.hayes@wilsonelser.com

3023842.4