UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
In the Matter of the Arbitration Between
GENERAL SECURITY NATIONAL INSURANCE
COMPANY,

                                                    **MEMORANDUM AND ORDER**

                     Petitioner,
                                                     10 CV 8682 (NRB)

          - and -

AEQUICAP PROGRAM ADMINISTRATORS,

                     Respondent.
----------------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

          Petitioner  General  Security  National  Insurance  Company
("General  Security")  has  petitioned  this  Court  for  an  order
confirming  an  arbitration  award  pursuant  to  the  Federal
Arbitration  Act,  9  U.S.C.  §§ 1  et  seq.   In  opposition,
respondent  AequiCap  Program  Administrators  ("AequiCap")  contends
that  this  Court  should  deny  General  Security's  petition  and
should  vacate  a  portion  of  the  arbitration  award.   Specifically,
AequiCap  argues  that  the  arbitration  panel  exceeded  its
authority  and  acted  in  manifest  disregard  of  clear  law  by
awarding attorney's fees to General Security.

          For  the  reasons  stated  herein,  we  reject  AequiCap's
arguments  and  grant  General  Security's  petition  to  confirm  the
arbitration award.

## BACKGROUND

Petitioner General Security is an insurance company that is organized under the laws of Delaware and has its principal place of business in New York.  Respondent AequiCap is an insurance managing general agency that is organized under the laws of, and has its principal place of business in, Florida.  (Petition to Confirm Arbitration Award ("Pet.") ¶¶ 1-2.)  On June 20, 2003, General Security and AequiCap entered into the Amended Contingent Commission Agreement ("ACCA").  The ACCA provides, among other things, that AequiCap will reinsure General Security's losses and specifies a payment formula. (Pet. Ex. 1.)

Paragraph 13 of the ACCA provides that: "[a]ny disputes arising under this Agreement are subject to the arbitration clause in the Underwriting Agreement."  The Underwriting Agreement was a preexisting agreement, which was entered into by General Security, General Security Property and Casualty Company, and AequiCap on January 1, 1997.[1]  (Pet. ¶ 6 & Ex. 2.)

Section XII(C) of the Underwriting Agreement, which is incorporated into the ACCA, sets forth the parties' agreement to

---

[1]  In both the ACCA and the Underwriting Agreement, General Security's counterparty is listed as Professional Insurance Underwriters, Inc. ("PIU"), not AequiCap.  PIU was a predecessor entity; however, the record does not clearly establish whether PIU was the predecessor of AequiCap or of one of AequiCap's affiliates. (Pet. Exs. 1-3; Reply Affidavit of Bruce M. Friedman, Esq. ("Friedman Aff.") Ex. 2 at 6 n.5.)  Putting this ambiguity aside, the parties do not dispute that the respondent in this action is a party to the above-mentioned agreements.  Thus, with this background in mind, we note that we refer to General Security's counterparty and the respondent herein as AequiCap throughout this Memorandum and Order.

arbitrate ("Arbitration Clause").   The Arbitration Clause

provides that:

> [i]n the event that any disagreement or
> dispute shall arise as to the effect or
> interpretation of any of the terms,
> provisions or conditions of this Agreement,
> or as to the performance of either party
> under this Agreement, the parties hereto
> shall submit such disagreement or dispute
> for resolution to a panel of three
> disinterested arbitrators who shall be
> experienced in the fields of insurance and
> the American Agency system.   One arbitrator
> shall be appointed by [AequiCap] and one by
> [General Security]. . . .   A third wholly
> disinterested arbitrator . . . shall be
> selected by the parties' two arbitrators
> within thirty (30) days of the submission
> for arbitration. . . . The arbitration panel
> shall make its decision with regard to the
> provisions of this Agreement and the custom
> and usage of the insurance business to the
> extent not inconsistent with the provisions
> of this Agreement.   The arbitration panel
> shall issue its decision in writing based on
> a hearing to be held in New York City in
> which evidence may be introduced without
> following the strict rules of evidence, but
> in which cross examination and rebuttal
> shall be allowed.   The panel shall make its
> decision within sixty (60) days following
> the termination of the hearing unless the
> parties agree to an extension.   The majority
> decisions of the panel shall be final and
> binding upon all parties to the proceeding.
> Judgment may be entered upon the award of
> the panel in any court having jurisdiction
> thereof.

(Pet. ¶ 6 & Ex. 2.)

The ACCA itself does not include a choice of law provision.

However, the Underwriting Agreement includes such a provision,

which is set forth in section XII(I) of the Underwriting Agreement. The choice of law provision recites that:

> [t]his Agreement shall be interpreted in accordance with the laws of the State of New York with respect to matters concerning General Security Property and Casualty Company and the laws of the State of New York with respect to matters concerning [General Security].

(Declaration of Emily A. Hayes in Support of Memorandum of Law in Opposition to Petition to Confirm Arbitration Award ("Hayes Decl.") Ex. B.)

On November 10, 2009, General Security made a demand for arbitration pursuant to the Arbitration Clause. In its demand, General Security sought reimbursement of $426,802, an amount that it alleged AequiCap owed to it under the ACCA. (Pet. ¶ 7.) After General Security submitted its demand for arbitration, AequiCap asserted a counterclaim, in which AequiCap alleged that General Security and/or its third-party claim administrator negligently handled claims. (Pet. ¶ 10.)

On February 26, 2010, a three-person arbitration panel, which included two party-appointed arbitrators and a neutral umpire, was constituted ("Panel"). (Pet. ¶¶ 8-9.) According to the Petition, in the months that followed, the parties conducted discovery on General Security's claim and on AequiCap's counterclaim. (Pet. ¶ 11.)

Thereafter, General Security filed a motion for summary judgment on its claim. In connection with the motion, the Panel conducted a hearing and received briefing from the parties.[2] (Pet. ¶ 12.) On October 18, 2010, following the hearing, the Panel issued an award to General Security, which provided that:

> (1) [General Security's] Motion for Summary Judgment is granted.
>
> (2) [AequiCap] shall pay [General Security] the principal amount of $426,802.00, and pre-award interest in the amount of 5% calculated from thirty (30) days after each invoice was rendered.
>
> (3) [AequiCap] shall pay the total amount of this Award to [General Security] within thirty (30) days of the date of this Award. Post-Award interest on the amount awarded in paragraph 2, computed at the rate of 7%, shall commence running thirty (30) days after the date of this Award.
>
> (4) [General Security] is also awarded its attorney's fees and disbursements incurred in connection with its prosecution of this arbitration in an amount to be determined at the hearing on this matter.[3]

(Pet. ¶¶ 11-12 & Ex. 3.) The Panel did not address AequiCap's counterclaim in its October 18, 2010 award. However, on October 21, 2010, the Panel issued an order permitting AequiCap to withdraw its counterclaim without prejudice. (Pet. ¶¶ 12-13.)

---

[2] In these written submissions, both parties requested that the Panel award it attorney's fees and costs arising from the arbitration. (See, e.g., Friedman Aff. Ex. 1 at 17-18; Friedman Aff. Ex. 2 at 31-35.)

[3] AequiCap, in urging the Panel to permit it to withdraw its counterclaim without prejudice, argued that Florida law applied and that Florida law, unlike Federal law or New York state law, permitted withdrawal without prejudice. (Friedman Aff. Ex. 1 at 19.)

On October 25, 2010, the Panel conducted a hearing to determine the amount of the attorney's fees to be awarded to General Security.    At the hearing, AequiCap moved for reconsideration of the fee award, arguing for the first time that the Panel lacked authority to award attorney's fees.  (Pet. ¶ 14; Hayes Decl. Ex. D; Friedman Aff. Ex. 1.)  The Panel did not rule on AequiCap's motion during the hearing.   However, on October 27, 2010, the Panel issued an order directing both parties to furnish written submissions regarding the propriety of the fee award.  (Pet. ¶¶ 15-16.)  On November 16, 2010, after receiving both parties' supplemental submissions, the Panel denied AequiCap's motion for reconsideration and awarded General Security $239,946 as compensation for "attorneys' fees and disbursements incurred" in connection with the arbitration. (Pet. ¶ 16.)

General Security filed the instant petition to confirm the arbitration award the following day.  As noted above, AequiCap opposed General Security's petition and specifically requested in its opposition that the Court vacate the Panel's attorney's fee award.

To date, AequiCap has not made payment on the arbitration award, including on the undisputed portion of the award.

## DISCUSSION

### I.   Legal Standard

"It is well established that courts must grant an arbitration panel's decision great deference." Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003); see also Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Indeed, "confirmation of an arbitration award 'is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)).

Under the Federal Arbitration Act, a court "must grant" a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected." 9 U.S.C. § 9.[4] Section 10 of the Federal Arbitration Act specifies the narrow grounds for vacating an arbitration award. 9 U.S.C. § 10; see also Folkways

---

[4] The Federal Arbitration Act creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [Federal Arbitration] Act." PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1198 (2d Cir. 1996) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Any arbitration agreement affecting interstate commerce is subject to the Federal Arbitration Act. Bybyk, 81 F.3d at 1198 (citing 9 U.S.C. §§ 1, 2).

Music, 989 F.2d at 111.   Pursuant to § 10, a court may vacate an
arbitration award in four specific situations:

> (1) where the award was procured by
> corruption, fraud, or undue means; (2) where
> there was evident partiality or corruption
> in the arbitrators, or either of them; (3)
> where the arbitrators were guilty of
> misconduct in refusing to postpone the
> hearing, upon sufficient cause shown, or in
> refusing to hear evidence pertinent and
> material to the controversy; or of any other
> misbehavior by which the rights of any party
> have been prejudiced; or (4) where the
> arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual,
> final, and definite award upon the subject
> matter submitted was not made.

9 U.S.C. § 10(a); see also AT&T Mobility LLC v. Concepcion, 563
U.S. ___, ___ S. Ct. ___, 2011 WL 1561956, at *12 (Apr. 27,
2011) ("[R]eview under § 10 focuses on misconduct rather than
mistake."); Duferco, 333 F.3d at 388 ("The Federal Arbitration
Act . . . permits vacatur of an arbitration award in only four
specifically enumerated situations, all of which involve
corruption, fraud, or some other impropriety on the part of the
arbitrators.").

Additionally, § 11 of the Federal Arbitration Act
enumerates the bases for modifying or correcting an arbitration
award.   That section provides that a court may modify or correct
an award:

> (a) Where there was an evident material
> miscalculation of figures or an evident
> material mistake in the description of any

> person, thing, or property referred to in
> the award. (b) Where the arbitrators have
> awarded upon a matter not submitted to them,
> unless it is a matter not affecting the
> merits of the decision upon the matter
> submitted. [or] (c) Where the award is
> imperfect in matter of form not affecting
> the merits of the controversy.

9 U.S.C. § 11.

In addition to the express grounds for vacating, modifying, or correcting an arbitration award, the Second Circuit has recognized an implied basis for such action where an award is in "manifest disregard" of the law. See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010). Awards are vacated on the grounds of manifest disregard only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent." Duferco, 333 F.3d at 389; see also T.Co, 592 F.3d at 339.[5]

AequiCap contends that there are two applicable -- and related -- grounds for vacating the Panel's award: first, AequiCap argues, under § 10(a)(4), that the Panel exceeded its

---

[5] Two recent decisions of the Supreme Court of the United States cast some doubt on the ongoing reach of the manifest disregard doctrine. See Hall St. Assocs. L.L.C. v. Mattel, Inc., 552 U.S. 576, 584-91 (2008) (holding that sections 10 and 11 of the Federal Arbitration Act specify the exclusive grounds for vacating, modifying, or correcting an arbitration award under the Act); see also Stolt-Nielsen S.A. v. Animalfeeds Int'l Corp., 130 S. Ct. 1758, 1768 n.3 (2010) ("We do not decide whether 'manifest disregard' survives our decision in [Hall Street Associates] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."). Nevertheless, the Second Circuit has concluded that the doctrine has survived the Supreme Court's decision in Hall Street Associates, see T.Co, 592 F.3d at 339-40, and therefore we address AequiCap's argument that the fee award should be vacated on the grounds of manifest disregard.

authority by awarding attorney's fees; and second, AequiCap contends that the Panel acted in manifest disregard of the law when it awarded attorney's fees to General Security.

We address these bases for vacating the award in turn.

**II.  Vacatur Pursuant to 9 U.S.C. § 10(a)(4)**

First, AequiCap argues that this Court should vacate the award under § 10(a)(4) of the Federal Arbitration Act because the Panel lacked authority under the Arbitration Clause to award attorney's fees.

**A.  Standard**

Section 10(a)(4) authorizes vacatur of an arbitral award "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4).  This ground for relief is limited; the Second Circuit has "'consistently accorded the narrowest of readings' to this provision of law." Reliastar Life Ins. Co. v. EMC Nat'l Life Co., 564 F.3d 81, 85 (2d Cir. 2009) (quoting Banco de Seguros del Estado v. Mut. Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003)).  This strict limit on a reviewing court's power to vacate is intended to "facilitate the purpose underlying arbitration: to provide parties with efficient dispute resolution, thereby obviating the need for protracted litigation." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 342 (2d Cir. 2010); see also Reliastar, 564 F.3d at 85.

In considering AequiCap's challenge pursuant to § 10(a)(4), "'the principal question for the reviewing court is whether the arbitrator's award draws its essence' from the agreement to arbitrate, 'since the arbitrator is not free merely to dispense his own brand of industrial justice.'" Reliastar, 564 F.3d at 85 (quoting 187 Concourse Assocs. v. Fishman, 399 F.3d 524, 527 (2d Cir. 2005)).  As the Second Circuit held in Reliastar:

> [i]f the answer to this question is yes, however, the scope of the court's review of the award itself is limited.  Notably, we do not consider whether the arbitrators correctly decided [the] issue. . . .  In other words, as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, a court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision.

564 F.3d at 85-86 (internal citations and quotations omitted; second alternation in original).

Finally, "[w]here an arbitration clause is broad, arbitrators have the discretion to order such remedies as they deem appropriate." Reliastar, 564 F.3d at 86 (citing Banco de Seguros, 344 F.3d at 262).  Specifically, a broad arbitration clause "confers inherent authority on arbitrators to sanction a party that participates in the arbitration in bad faith and that such a sanction may include an award of attorney's or arbitrators' fees." Reliastar, 564 F.3d at 86.

**B.   Discussion**

AequiCap argues that the Arbitration Clause is not broad and that the Panel exceeded the authority conferred to it by the parties.   General Security, on the other hand, argues that the parties drafted a broad arbitration provision.   Because the Arbitration Clause is broad, General Security contends, the Panel had inherent authority to award attorney's fees, as squarely determined in Reliastar.

As a threshold matter, arbitration provisions that specify that "any disputes" shall be determined by arbitration are typically deemed to be "broad" arbitration provisions.   See, e.g., Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 59–61 & n.7 (1995) (concluding that a provision that provided that "any controversy" arising out of transactions between the parties "shall be settled by arbitration" was a broad provision); Reliastar, 564 F.3d at 84, 86 (concluding that a provision that provided that "any disputes or differences arising hereafter between the parties with reference to any transaction under or relating in any way to this Agreement . . . shall be decided by arbitration" was a broad provision); PaineWebber Inc. v. Bybyk, 81 F.3d 1193, 1196, 1999–1200 (2d Cir. 1996) (concluding that a provision that provided that "any and all controversies which may arise between me and PaineWebber concerning any account, transaction, dispute, or the

construction, performance, or breach of this or any other agreement . . . shall be determined by arbitration" was "a broad grant of power to the arbitrators"). Additionally, courts look to whether an arbitration provision carves out substantive eligibility issues, timeliness issues, or types of relief that may or may not be awarded. See, e.g., Mastrobuono, 514 U.S. at 58-62; Reliastar, 564 F.3d at 86-89; Bybyk, 81 F.3d at 1200-02; Nat'l Union Fire Ins. Co. v. Odyssey Am. Reinsurance Corp., No. 05 Civ. 7539 (DAB), 2009 WL 4059183, at *5-6 (S.D.N.Y. Nov. 18, 2009).

Here, we conclude that the Arbitration Clause was indeed a broad provision. The parties used expansive language to define the types of disputes to be submitted to arbitration and they declined to carve out or limit the types of relief that the Panel was entitled to award. Notably, in drafting the Arbitration Clause, the parties failed to signal that they intended to limit the authority conferred upon the Panel by restricting the types of relief that the Panel could award. In light of the breadth of the contractual language, and in the absence of any contracted-for limitations, we conclude that the Panel had the inherent authority to award attorney's fees.[6]

---

[6] Although we conclude that the Panel had inherent authority to award attorney's fees, there is at least one other colorable argument regarding the Panel's authority to enter a fee award. Namely, the Panel could have concluded that, based on the parties' requests for a fee award, (Friedman Aff. Ex. 1 at 17-18) it had actual authority to award attorney's fees. As

Additionally, under § 10(a)(4), we do not consider whether the Panel correctly decided the underlying issue -- in other words, we will not address "whether the arbitrators correctly identified bad faith conduct or whether the amount of the fees awarded was an appropriate sanction for that conduct." Reliastar, 564 F.3d at 86.

Thus, we decline to vacate the Panel's award on the grounds that the Panel exceeded its authority by awarding attorney's fees to General Security.[7]

### III. Vacatur on the Grounds of Manifest Disregard

Next, AequiCap contends that New York law governed the arbitration, New York law unambiguously prohibits fee awards in arbitrations, and therefore the Panel acted in manifest disregard of the law.

#### A.   Standard

As noted above, AequiCap bears a "heavy burden" in its endeavor to vacate the Panel's award on this ground.  See T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010); GMS Grp., LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003).  Notably, evidence of an arbitrator's mistake will

discussed in section III-B, infra, a fee award may be independently authorized by the conduct of the parties during an arbitration (i.e., the parties provide actual authority to the arbitrators if they all specifically request attorney's fees).

[7] For the reasons discussed in section III, infra, this conclusion is not altered by AequiCap's argument that New York law applies to the ACCA and therefore a limitation on the authority of the Panel was incorporated into the otherwise broad Arbitration Clause.

not suffice.  In fact, "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law.  On the contrary, the award should be enforced, despite a court's disagreement with it on the merits, if there is a barely colorable justification for the outcome reached."  Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (internal citations and quotations omitted).

This Circuit has identified a three-step inquiry into whether an arbitration award should be vacated on the grounds of manifest disregard:

> First, we must consider whether the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators.  An arbitrator obviously cannot be said to disregard a law that is unclear or not clearly applicable.  Thus, misapplication of an ambiguous law does not constitute manifest disregard.
>
> Second, . . . we must find that the law was in fact improperly applied, leading to an erroneous outcome.  . . . Even where explanation for an award is deficient or non-existent, we will confirm it if a justifiable ground for the decision can be inferred from the facts of the case.
>
> Third, . . . we look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him.

T.Co, 592 F.3d at 339 (quoting Stolt-Nielsen SA v. AnimalFeeds Int'l Corp., 548 F.3d 85, 93 (2d Cir. 2008), rev'd on other grounds, 130 S. Ct. 1758 (2010); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389-90 (2d Cir. 2003)).

## B.   Discussion

In support of its position that this Court should vacate the Panel's award, AequiCap argues that New York law applies to the dispute and that New York law prohibits the award of attorney's fees in an arbitration.  Specifically, AequiCap contends that, pursuant to section 7513 of New York's Civil Procedure Law and Rules ("C.P.L.R."), attorney's fees may not be awarded by arbitrators unless the parties expressly agree that such an award is proper.[8]

In its opposition papers, AequiCap cites authority in support of the proposition that the C.P.L.R. prohibits attorney's fee awards.  See, e.g., McLaughlin, Piven, Vogel Secs., Inc. v. Ferrucci, 67 A.D.3d 405, 406, 889 N.Y.S.2d 134, 135 (N.Y. App. Div. 1st Dep't 2009) (noting the general principle that, because a fee award is not permitted by statute, such an award is unauthorized under New York law if it is not

---

[8] C.P.L.R. 7513 provides, in relevant part:

> [u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including attorney's fees, incurred in the conduct of the arbitration, shall be paid as provided in the award.

N.Y. C.P.L.R. 7513 (emphasis added).

expressly authorized in the arbitration agreement or not requested by both parties during the arbitration); In re Stewart Tabori & Chang, Inc., 282 A.D.2d 385, 386, 723 N.Y.S.2d 492, 494 (N.Y. App. Div. 1st Dep't 2001) (same); Kidder, Peabody & Co., Inc. v. McArtor, 223 A.D.2d 502, 503, 637 N.Y.S.2d 99, 101 (N.Y. App. Div. 1st Dep't 1996) (same). AequiCap further contends that the Panel was aware of this authority and elected to disregard it. (Memorandum of Law in Opposition to Petition to Confirm Arbitration Award ("Resp. Mem.") at 14-18; Hayes Decl. Exs. D, E.)

By contrast, General Security makes a series of arguments in support of its position that the fee award was authorized and that the Panel did not manifestly disregard clear and applicable law. Among other things, General Security argues: (1) that only the Arbitration Clause, and not the choice of law provision in the Underwriting Agreement, was incorporated into the ACCA, and thus New York law was inapplicable to the arbitration; (2) that even if New York law were to apply, the choice of law provision only incorporates substantive legal principles, as opposed to procedural limits on an arbitrator's authority such as C.P.L.R. 7513; (3) that the language of the Arbitration Clause is broad and confers the Panel with the authority to award attorney's fees; (4) that both parties expressly requested that the Panel award attorney's fees, and therefore the parties authorized the

17

award by their conduct during the arbitration; and (5) that AequiCap is judicially estopped from arguing that New York law applies because it argued that Florida law should apply when it urged the Panel to permit it to withdraw its counterclaim without prejudice. (Reply Memorandum of Law in Further Support of Petition to Confirm Arbitration Award; Friedman Aff. Ex. 1.)

We reject AequiCap's argument that the Panel acted in manifest disregard of the law. Specifically, we conclude that AequiCap cannot satisfy the first step of this Circuit's three-step inquiry. Although AequiCap directs our attention to authority that could support its position, it cannot establish that the law the Panel allegedly ignored was clear and was in fact applicable to the present issue.

Indeed, a number of arguments raised by General Security during the arbitration and in connection with this petition would justify the Panel's decision. For example, in Mastrobuono v. Shearson Lehman Hutton, Inc., the Supreme Court of the United States reversed the Seventh Circuit, which had affirmed the vacatur of a punitive damage award in a similar context. 514 U.S. 52, 53-55 (1995). In that case, the petitioners, individual investors, had opened a securities trading account with the respondents, and the relationship was governed by an agreement that contained both an arbitration clause and a New York choice of law provision. Id. at 54-55. Prior to

18

litigating, the parties submitted a dispute to arbitration, and the arbitrators granted the petitioners an award that included punitive damages.  Id. at 54.  Thereafter, the respondents filed a motion in district court to vacate the punitive damages portion of the award.  The district court granted the motion, concluding that the contract contained a New York choice of law provision and that, under New York law, arbitrators lacked authority to award punitive damages.  Id.  The Seventh Circuit affirmed on similar grounds.  Id. at 54-55.

In reversing the lower courts, the Supreme Court addressed the import of both the arbitration clause and the choice of law provision.  The court concluded that the arbitration clause -- which provided that "any controversy" arising out of transactions between the parties "shall be settled by arbitration" -- was sufficiently broad to contemplate a remedy of punitive damages.  Id. at 58-61.  With respect to the choice of law provision, the Supreme Court concluded that the provision "may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship."  Id. at 59.  In sum, the court concluded that:

> [w]e think the best way to harmonize the
> choice-of-law provision with the arbitration
> provision is to read 'the laws of the State
> of New York' to encompass substantive
> principles that New York courts would apply,

<u>but not to include the special rules
limiting the authority of arbitrators</u>.

<u>Id.</u> at 63-64 (emphasis added).

In <u>PaineWebber Incorporated v. Bybyk</u>, the Second Circuit was presented with a similar task of determining the remedies available to parties who had entered into an agreement with an arbitration clause and a New York choice of law provision.   81 F.3d 1193, 1195-96 (2d Cir. 1996).   On appeal, PaineWebber argued that "the Bybyks may not submit their claim for attorneys' fees to arbitration because the Agreement provides that it and its enforcement 'shall be governed by the laws of the State of New York.'"   <u>Id.</u> at 1202.   PaineWebber further argued that, pursuant to C.P.L.R. 7513, a request for attorney's fees may not be submitted to an arbitrator unless expressly authorized by the arbitration agreement.   <u>Id.</u>   The Second Circuit, relying on <u>Mastrobuono</u>, concluded that the choice of law provision in the contract only incorporated New York substantive law, not New York rules limiting the authority of arbitrators.   <u>Id.</u> at 1200 (citing <u>Mastrobuono</u>, 514 U.S. at 64). The Second Circuit further reasoned that:

> [t]he Agreement provides that 'any and all controversies' shall be submitted to arbitration; there is no express limitation with respect to attorneys' fees. . . . [Thus,] a choice of law provision will not be construed to impose substantive restrictions on the parties' rights under the Federal Arbitration Act, including the

> right to arbitrate claims for attorneys'
> fees.

Bybyk, 81 F.3d at 1202.

Presented with this authority, the Panel reasonably could have reached the conclusion, urged by General Security during the arbitration and in connection with this proceeding, that a fee award was proper. Specifically, the Panel could have concluded that the choice of law provision was broad enough on its face to contemplate a fee award, that the choice of law provision only incorporated substantive principles of New York law, that C.P.L.R. 7513 and the case law cited by AequiCap did not apply, and that a fee award was proper under Mastrobuono and Bybyk.

Alternatively, the Panel could have accepted General Security's argument that the parties authorized the fee award when they both requested such an award during the pendency of the arbitration. Indeed, even the cases cited by AequiCap uniformly support the proposition that parties may acquiesce to a fee award by demanding attorney's fees during an arbitration. See, e.g., McLaughlin, 67 A.D.3d at 406, 889 N.Y.S.2d at 135 (noting that a fee award would be proper when both parties request attorney's fees during an arbitration); In re Matza v. Oshman, Helfenstein & Matza, 33 A.D.3d 493, 494, 823 N.Y.S.2d 47, 48 (N.Y. App. Div. 1st Dep't 2006) (same); Bear Stearns &

21

<u>Co., Inc. v. Fulco</u>, 21 Misc. 3d 823, 830 (Sup. Ct. N.Y. Cnty. Sept. 23, 2008) (same) (collecting cases).  Here, the Panel could have accepted General Security's argument that AequiCap requested attorney's fees no fewer than three times during the arbitration (Friedman Aff. Ex. 1 at 17-18), and therefore the parties, through their conduct, authorized the fee award.

For these reasons, we reject AequiCap's argument that the Panel acted in manifest disregard of the law.  Although AequiCap has cited authority in support of its argument that attorney's fees are unauthorized under New York law, General Security points to ample authority that supports the Panel's decision and far exceeds the requirement that there be a barely colorable justification for the Panel's outcome.  Accordingly, AequiCap cannot establish that the Panel was aware of and disregarded clear and applicable law; at best, AequiCap may be able to establish that the law was unclear, but misapplication of unclear or ambiguous law cannot, by definition, be the basis for vacating an arbitration award on the grounds of manifest disregard.

Because AequiCap has failed to establish grounds for vacating, modifying, or correcting the arbitration award, we

must grant General Security's petition to confirm the arbitration award. See 9 U.S.C. § 9.[9]

**CONCLUSION**

For the foregoing reasons, we grant General Security's petition and direct the Clerk of the Court to close this case.

Dated:     New York, New York
           April 29, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[9] On February 28, 2011, AequiCap Insurance Company ("AIC"), an affiliate of the respondent in the instant action, was ordered into a receivership for the purpose of rehabilitation by the Second Judicial District in and for Leon County, Florida.  On March 7, 2011, the same court placed AIC into liquidation.  The rehabilitation order, dated February 28, 2011, and the liquidation order, dated March 7, 2011, provide notice of an automatic stay which affects, to various degrees, AIC and certain of its affiliates.  The parties to this action do not contend that the automatic stay prevents this Court from rendering a decision in this case.  We likewise agree that we may resolve this petition but take no position regarding whether General Security may enforce any judgment against AequiCap in light of the automatic stay.

Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Petitioner**
Bruce M. Friedman
Gerald A. Greenberger
Rubin, Fiorella & Friedman, LLP
292 Madison Avenue
11th Floor
New York, NY 10017

**Attorneys for Respondent**
Emily A. Hayes
Fred N. Knopf
Wilson Elser Moskowitz Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604